BROWER and others vs. MERRILL.

1. ERROR. — Error will not be presumed, but the party alleging it must establish it by the record.
2. SAME. — A party cannot be heard to complain of an error which does not operate to his prejudice.

3. MILL DAM LAW DAMAGES. — In an action under the mill dam law of 1840, the use a man may have of a mill not his, by having grain ground or lumber sawed at it, or the enhanced value of his lands in consequence of a town growing up around the mill are not such benefits as can be set off against the actual damages for flowing his lands.
4. SAME. — The benefits which may be set off against the damages caused by the flowing must consist of benefits resulting from the same cause, as by causing useful watering places where there were none before, and by irrigating and fertilizing arid and barren lands, etc. See *post, Mil. & Miss. R. R. Co. v. Eble.*
5. CHARGE TO JURY. If the court does not in its charge cover points upon which the jury should be instructed, the remedy of the party is by requesting proper instructions on such points, and if refused, by exceptions to such refusal.

(3 Chand., 46.)

ERROR to the Circuit Court for *Dodge* County.

The plaintiff, *Merrill,* complained against the defendants, *Geo. W.* and *John L. Brower,* under the mill dam act of 1840, alleging that he was the owner of certain lands described in his complaint, valuable for agricultural purposes ; that the defendants erected and maintained a dam on the outlet of Fox Lake adjacent thereto, whereby the water in said lake was raised and made to overflow a portion of said lands and whereby they became submerged and rendered useless, etc. Plea not guilty.

At the trial, the court among other things charged the jury that in estimating the benefits occasioned by said dam to the plaintiff in relation to his lands, the jury were only to consider the actual pecuniary advantage to the farm or lands of the plaintiff derived or which would probably be derived directly from the use of the mill, and not the remote and indirect benefit which the plaintiff might draw from the supposed appreciation or enhanced value of his land, in common with other lands similarly situated, by reason of a mill being there erected by the defendants, and a town growing up about it.

The jury found for the plaintiff; assessed the damages up to the time of finding the verdict at $119, and found that the annual damages thereafter would be $35, and that the

damages for maintaining the dam for all time thereafter would be $350.   A motion for a new trial founded upon alleged error in the charge of the court to the jury  having been denied, the plaintiff had judgment and the defendants brought this writ of error.

*Collins, Smith & Tappan,* for plaintiffs in error.

*C. Billinghurst* and *Jas. H. Knowlton* for defendant in error.

KNOWLTON, J.  This case was tried before the Chief Justice, and the question presented for the consideration of this court arises on a complaint instituted under the act of 1840, relating to mills and mill dams.

We might with propriety dispose of the points relied on by the plaintiff in error by saying that error is never presumed, but that the party alleging it must show it in some legitimate way.

In this case, no part of the evidence is before us.   No bill of exceptions, signed by the judge, accompanies or forms a part of the record.   It is therefore impossible to know whether the court below gave an instruction adapted to the facts given in evidence or not.   This court is bound to presume the charge applicable to the evidence and the case made out, and that the judge did not go beyond those limits.   We cannot countenance the idea that opposing counsel may by consent agree that certain instructions were given by a court, and thereby make records, without giving the judge. who is the proper functionary to declare the record, any opportunity to inspect it.   By such a course of practice a court might be made to say and do things (by designing men) which would be ridiculous in the extreme.   We do not wish to insinuate that any thing of this kind has occurred or  that  any  attempt of the kind is suspected.   We merely speak of the principle.

Before us is what is termed a bill of exceptions, which after the formal part, contains the following language :  " The court, among other things, charged the jury that in estimating the

benefits occasioned by said dam to the complainant in relation to his said lands, the jury were only to consider the actual pecuniary advantage to the farm or lands of the plaintiff, derived or which would probably be derived directly from the use of the mill, and not the remote and indirect benefit which the plaintiff might draw from the supposed appreciation or enhanced value of his land in common with other lands similarly situated by reason of there being a mill erected by the defendants, and a town growing up about it."

"Consented to." "C. BILLINGHURST."

We examine this (so called) bill of exceptions, as though the judge had signed it, and it contains all the error assigned. It is contended on behalf of the plaintiffs (defendants below) that that portion of the instruction is incorrect where it is said that "the jury were only to consider the actual pecuniary advantage to the farm or lands of the plaintiff derived, or which would probably be derived directly from the use of the mill." Because if they could only consider *such benefits*, that then a benefit derived for instance by erecting watering places in pastures before perfectly dry, or by irrigating and fertilizing an arid parcel, and thereby making good meadow land out of that which was almost worthless before, would be excluded from the consideration of the jury, although a legitimate benefit for the purpose of mitigating the damages. We do not think this a fair construction of the language used. The judge continues the sentence, saying, "and not the remote and indirect benefit which the plaintiff might draw from the supposed appreciation or enhanced value of his land in common with other lands similarly situated by reason of there being a mill erected by the defendants, and a town growing up about it."

Now what is the material inference to be drawn from the whole language used? Clearly that the defendants were contending that they were entitled to reduce the damages proved by the plaintiff by deducting therefrom the benefit accruing to the lands of the plaintiff not overflowed, the value of which

may have been greatly enhanced by the building up of a town near these lands, the town having grown up in consequence of the erection of the dam and mills. And also the benefit resulting to the plaintiff from his close proximity to the mills, whereby he might save much that he would lose in being obliged to go a great distance should he need any of the products of such a mill. Now in this part of the charge, the court essentially told the jury that they might consider, in mitigation of the plaintiff's damages, the actual pecuniary advantage to the farm or lands of the plaintiffs derived, or which would probably be derived *directly* from the use of the mill. If this was incorrect, it was in favor of the plaintiffs in error, and it does not lie with them to allege error on that matter. That can come from the opposite party only. It is very questionable, to say the least, whether the use a man may have of a mill not his, by having his grain ground or his lumber sawed, is such a benefit as can be set off against or deducted from the *actual* damage occasioned by flowing such person's land. Suppose in this case that the plaintiff had taken logs to the defendant's mill to be sawed into lumber, and the plaintiff had paid them in full for such sawing, what legal or equitable right had they to claim as a set off against the damages, this privilege exercised by the plaintiff in common with his neighbors who had sustained no injury whatever, though equally benefited by the dam and mills? Was this plaintiff to sustain all the actual damage consequent upon the erection of this dam, while the defendants and their neighbors had and enjoyed the same privileges? Is it just or legal to compel the person who had his lands taken without his consent, to pay just twice as much as any one else for the use and benefit of the mills? If so, it certainly is not presented in a very imposing attitude.

The statute under which these proceedings were commenced is copied from that of Massachusetts, and the courts of that state hold that the damage and benefit must result directly from the same cause, and that cause is the mere matter of flow-

ing.   In the case of *Eames v. New England Worsted Co.*, 11
Met., the court say :   " In addition to the  direct damage done
to the complainant's land by the action of water, either by flow-
ing over it and  preventing  or  destroying grass and other pro-
ducts, or by being absorbed into  it,  or  percolating  through it
under the surface so as to render it less  productive,  the com-
plainant offered evidence before the sheriff's jury to prove that
the flowed lands, when the water was drawn off,  emitted nox-
ious and  offensive  smells, and  thus  occasioned  damage to
lands of  the complainant other than those flowed  or rendered
unproductive,  but  contiguous  thereto ;  by  reason  whereof
the value of such other lands for building lots were dimin-
ished.   This evidence, though objected to, was admitted by
the sheriff.

" The manifest object of  this statute  is  to  secure to a land
owner, whose lands have  been  flowed or damaged directly by
water raised by a dam for mill purposes by another on his own
land, a fair and adequate compensation for that damage arising
directly from that cause.   The  law does  not  justify an allow-
ance for remote, possible or speculative  damages,. or  damages
to any other subject but land, or  by any other means than by
raising water by a dam for  mill  purposes.   Taking this to be
the settled rule in assessing  damages, the court are of  opinion
that the damages sought to be recovered in this case, and sanc-
tioned by the sheriff in his admission of  the evidence,  was too
remote and contingent.   The rule admits all direct damage by
raising water upon a complainant's land, as preventing all val-
uable growth, or by saturating it so as to render it unfit to pro-
duce good grass ;  by separating one  part of  the complainant's
land from another, so as to render bridges or  causeways neces-
sary, or other direct damage.   But this complaint seeks further
to recover for damages done to other lands, uplands not reached
or affected by the water raised by the dam, but in consequence
of noxious smells proceeding from the  land  flowed when not
covered by water, by means of which such  uplands are ren-

dered less eligible and valuable for building lots. It is too remote, and not within the scope of the mill dam act."

Again, in the case in 17 Pick., 58, the court say: "But by far the most material question in the present case, arises from the offer of the respondents to prove by way of setoff to the damage done by them to the complainant by flowing his lands, the increased value of his land and that of the vicinity, by the erection of manufactories, and the consequences which may be presumed to result from them in the increase of population, the establishment of schools, towns, stores, banks and all the usual incidents to the establishment of a manufacturing village, in a district which was before exclusively or essentially agricultural.

"It was ruled at the hearing, that such evidence was not competent. The rule actually adopted was that evidence might be admitted to prove any benefit to the tract of land belonging to the complainant, of which the land flowed was a part, by reason of the erection of the dam, but not in relation to the consequential benefits of the manufactory and mills, by reason of increased population and improvements in the vicinity, nor the consequential benefits arising from increase of markets, schools, stores, mechanics' shops, or the increased value of more eligible situations of the complainant's other land.

"We are of opinion that this rule is correct and carefully guarded and limited. The supposed benefits arising from the increased general prosperity, to the settlement or tract of country are too remote and contingent and indirect to be brought into consideration in the question of damages to a particular parcel of land arising from a particular cause. They are benefits which the proprietor whose lands are flowed enjoys, if he has them, in common with all those having lands so near as to be influenced by this general prosperity. Besides, these are benefits not arising directly and immediately from the building of a dam, and raising of a head of water, but from

Brower and others vs. Merrill.

the application of capital, enterprise and industry, both of the proprietor of the mills and others who are attracted thither by their establishment.    All the same consequences would ensue from the establishment of steam manufactories without any head of water."   The judge continues :

" Besides, the damages are given only for the injury done to the land by flowing, and any reduction or 'setoff to that damage must consist from benefits arising from the same cause, that is, from flowing the land."   Again he says :    " But the benefits to be set off must obviously be of the like kind with opposite injuries for which damages are sought."

The rule, therefore, which seems to be derived from the statutes of Massachusetts seems to be, to estimate the pecuniary loss arising to the proprietor from the direct injury done to his estate, taken as a whole, by flowing; deducting therefrom any benefit which may be done to the same estate by the same cause, namely, *by flowing.*

We think these decisions and the rule of sound law in point, and the doctrines contained in them, correct, and that the charge of the circuit judge was clearly within them, so far at least as the plaintiffs in error have a right to complain.   If the court did not cover ground that they desired on instructions to the jury, they should have directed attention to that particular matter, and requested an instruction given thereon, and then, if refused, they could and should have saved the point by bill of exceptions, and then brought error to this court.

We see no reason for disturbing the judgment. It must therefore be affirmed.

Judgment affirmed.