YOUNG (MILLER v.). See Case No. 9,596.

## Case No. 18,166.

### YOUNG et al. v. MONTGOMERY & E. R. CO. et al.

[2 Woods, 606; [1] 3 Am. Law T. Rep. (N. S.) 91.]

Circuit Court, M. D. Alabama. June, 1875.

BONDS INDORSED BY STATE—FORECLOSURE SUIT—STATE AS PARTY — SUBROGATION TO STATE'S RIGHTS — AUTHORITY OF GOVERNOR — SUIT BY JUNIOR MORTGAGEES—APPOINTMENT OF RECEIVER—PROPERTY IN CUSTODIA LEGIS.

1. It is not necessary to aver matter of law or public statute, of which the court takes judicial notice.

2. Where a state is concerned in the subject matter of the suit, it should be made a party, if that can be done; but the fact that the state cannot be sued is a sufficient excuse for not making it a party.

3. Where a state was an indorser of bonds secured by a statutory mortgage, it was not considered a necessary party in a suit brought by holders of bonds secured by the mortgage to foreclose the same.

4. A state indorsed the bonds of a railroad company, and was indemnified against loss on account of the indorsement by a statutory mortgage on the railroad property. Held, that the fact that the state could not be sued was no reason why the holders of the bonds so indorsed should not be subrogated to the rights of the state and have the benefit of the security.

[Cited in Western Div. of Western N. C. R. Co. v. Drew, Case No. 17,434; Tompkins v. Little Rock & Ft. S. Ry. Co., 21 Fed. 381.]
[Cited in brief in Poland v. Lamoille V. R. Co., 52 Vt. 159.]

5. An act of the legislature authorized the governor to indorse in behalf of the state the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

first mortgage bonds of a railroad company, bearing interest at the rate of eight per cent. per annum; the governor indorsed the bonds, and referred to the act in his indorsement as the authority therefor. *Held*, that the act authorized the indorsement of bonds bearing interest at eight per cent. per annum in gold.

6. Bona fide holders for value, of the bonds indorsed by the governor assuming to act under said authority, were not to be charged with constructive notice of the fact that the bonds so indorsed were not first mortgage bonds.

7. An act, passed subsequent to the one authorizing the indorsement of the said bonds, gave authority to the governor to indorse the bonds of the railroad company, notwithstanding there was a prior lien on said company's railroad, but it was claimed that this law did not pass the legislature by the vote required by the constitution, and was therefore null and void; yet that it was nevertheless constructive notice to the bondholders of the fact that the bonds owned by them were not first mortgage bonds. *Held*, that if this enactment were valid, it cured any defect in the authority of the governor to indorse the bonds, and that if it were not valid but void, it was not constructive notice to anybody of anything.

8. When a court having jurisdiction of a case has appointed a receiver for the property which is the subject of the suit, and he is in possession, no other court of co-ordinate jurisdiction can interfere with the property, or entertain complaints against the receiver, or undertake to remove him.

[Cited in Taylor v. Life Ass'n of America, 3 Fed. 470; Judd v. Bankers' & Merchants' Tel. Co., 31 Fed. 183; Dillon v. Oregon S. L. & U. N. Ry. Co., 66 Fed. 628; Hatch v. Bancroft-Thompson Co., 67 Fed. 809.]

9. Junior mortgagees may file a bill to foreclose their mortgage without making prior mortgagees parties, but a sale in such a case would necessarily be made subject to the prior mortgages.

10. In such a suit, the prior mortgagees can be made parties only by service of process or voluntary appearance. A general notice calling upon them to present their claims will not make them parties or bind them.

11. If, however, such prior mortgagees are represented by trustees who are actual parties to the suit, then a notice calling upon them to present their claims before the master would be effectual, and the decree of the court would bind them.

12. When junior mortgagees have first brought their suit to foreclose, and the court has taken possession of the mortgaged property by a receiver, the senior mortgagees cannot gain possession of the property by a suit subsequently began, until the first is ended.

[This was a bill in equity by Mason Young and others against the Montgomery & Eufaula Railroad Company and others. Heard on demurrer to the bill.]

Geo. W. Stone, David Clopton, and James T. Holtzclaw, for complainant.

Samuel F. Rice, D. S. Troy, and H. C. Tompkins, contra.

WOODS, Circuit Judge. The defendant company is an Alabama corporation, which has constructed and equipped a railroad from Montgomery to Eufaula in said state. The case made by the bill is substantially as follows: The complainants are holders of certain bonds belonging to a class of bonds issued by the defendant railroad company and indorsed by the state of Alabama; twelve hundred and eighty of these bonds, for $1,000 each, were issued, indorsed by the state and put in circulation, and the indorsement was put upon said bonds before they were disposed of by the railroad company. One thousand of these bonds bear date the 31st of August, 1867, and are payable on the 1st day of March, 1886. To each of these bonds are attached coupons, thirty-seven in number, one on each bond for the payment of $40 in United States gold coin, on the first day of March, 1868, and others severally for the payment of a like sum in like coin, at the end of each six months thereafter, until the bonds themselves become due. The other two hundred and eighty bonds are substantially like the thousand bonds first named, with a like indorsement, but the date of these bonds and the date of their maturity is not stated in the bill. The indorsement upon all the bonds is in these words: "In pursuance of an act of the legislature of the state of Alabama, approved February 19, 1867, entitled 'An act to establish a system of internal improvements in the state of Alabama,' the undersigned, governor of the state, hereby for the state, indorses this bond and makes the state liable for its payment; the Montgomery & Eufaula Railroad Company having complied with the conditions upon which the undersigned is required on the part of the state to give such indorsement. In witness whereof, the undersigned, governor of the state of Alabama, has hereunto set his hand, this —— day of ——, 1866. (Signed) R. M. Patton, Governor of the State of Alabama." All of these bonds bear date before the first of March, 1873, but may have different dates and the indorsement of different governors, and are numbered serially, from one up to twelve hundred and eighty. The bonds held by complainants were sold before March 1, 1873, at not less than ninety cents on the dollar, and were put in circulation, and complainants became the owners of such of said bonds as are specified in a schedule annexed to the bill bona fide and for a valuable consideration, and the bonds held by complainants amount to $215,000. No mortgage was executed by the railroad company to secure these bonds, the company being advised by its counsel that no mortgage was necessary. No interest has been paid to the complainants on their bonds since the first day of September, 1872, and the railroad company is, and for more than two years has been, insolvent. The railroad and its property is, and for a long time has been, in the possession and control of the defendant, Andrew J. Lane, who by virtue of an appointment made in a suit brought by Samuel A. Strang against the said railroad company in the interest of certain persons, claiming to be second mortgage bondholders; such suit is pending in the circuit court of the United

States for the Southern district of Alabama. The bonds on which that suit is based show upon their face that they are second mortgage bonds, and that the mortgage by which they are secured is subject to the prior lien of the series of 1,280 bonds before mentioned, part of which complainants hold; and the bill of complaint under which said Lane holds as receiver, admits the prior lien of said 1,280 bonds.

It is charged that Lane, at the time of his appointment as receiver, was, and long before had been, the president of the said railroad company, and was a large creditor thereof, was interested as a stockholder and as a holder of a large number of said second mortgage bonds. It is alleged that the answer of the railroad company to the bill filed by Strang was dictated by Lane; that he was appointed receiver on the same day the bill was filed; that he was authorized to take possession of the road and property of the railroad company and manage and run it, and, on application to and approval of the court, to borrow money on his certificates for the purpose of repairing and running the property of the company; that on the 15th day of July, 1872, he applied to the court for leave to borrow $60,000, which was granted on the 19th of July, 1872. It is alleged that on the 31st of January, 1873, Lane applied to the court for authority to pay Lehman, Durr & Co., bankers, the sum of $12,202.09, which he, as receiver, had overdrawn, in order to meet taxes and executions, which would have stopped the operations of the road; and the court ordered him to make the payment out of the earnings of the road. The bill alleges, on information and belief, that Lane has filed no reports or accounts, and that a report made by him to the bondholders shows that he has expended the money, borrowed by authority of the court, for other and different objects than those authorized by the orders of the court. (I may say in passing that I have read the report referred to, which is alluded to in the bill as Exhibit No. 5, and it totally fails to sustain the allegations of the bill.) Other complaints are made of the receiver Lane, that he has applied to the court and obtained orders which the court ought not to have granted. The bill alleges further that the complainants cannot learn from the report of Lane, the receiver already referred to, whether the railroad has realized any and, if any, what net profits. It alleges that the South & North Alabama Railroad Company, by petition, had itself made a party defendant, and has filed a cross-bill in the said suit of Samuel A. Strang, in which it claims that it has a first lien upon said railroad for many thousand dollars; but complainants aver that by virtue of the laws of Alabama, under which the bonds held by them were indorsed, their bonds are the first and best lien on the road, complainants having purchased their bonds without notice of any older lien.

It is further alleged, "that leave has been obtained from Hon. W. B. WOODS, one of the justices of the circuit court of the United States for the Southern district of Alabama, to bring suit against the said Andrew J. Lane, receiver, in the circuit court for the Middle district of Alabama, on the claims of complainant hereinbefore set forth." Such are the averments of the bill.

The Montgomery & Eufaula Railroad Company, the South & North Alabama Railroad Company, the said Andrew J. Lane, receiver as aforesaid, and William Fowler and Thomas Pullum, who are averred to be the trustees of the second mortgage executed by said Montgomery & Eufaula Railroad Company, are made defendants to the bill; and the prayer of the bill is, that this court will remove and take the said railroad and all the property and assets of the company and its control and management out of the custody and direction of the said Andrew J. Lane; that complainants, and all others in similar rights with them, who will come in and contribute to the expenses of the suit, may be subrogated to the lien and rights of the state of Alabama upon the property and franchise of said railroad company, and said lien established and purchased; that the property and effects of the said company may be administered in this court, and said property and assets and its income and profits be appropriated by sale or otherwise to the interest due on the bonds held by complainants and others in similar right; and that an account may be taken of the proceedings and administration of said Lane, etc., and for general relief.

In order to understand clearly the case made by the bill, it is necessary to refer to the act of the state of Alabama of February 19, 1867, as subsequently amended, by virtue of which the governor indorsed the bonds of the railroad company. This act (section 1) authorizes and requires the governor "to indorse in behalf of the state the first mortgage bonds of any railroad company in the state having completed and equipped twenty continuous miles of railroad, at the rate of $12,000 per mile, for each section of twenty miles so completed and equipped." The act further provides (section 4) that the railroad company is authorized "to issue the bonds of the company for such amount as it may determine, bearing interest at a rate not to exceed eight per cent. per annum, the interest to be paid semi-annually; * * * said bonds when indorsed by the governor on the part of the state shall recite the fact that they are first mortgage bonds, issued in accordance with and upon the conditions of this act; and said first mortgage and bonds issued thereon shall have priority in favor of the state (over) any and all other liens whatever." See Acts Ala. 1866, 1867, p. 680.

It is plain that the theory of complainants is, that the governor having indorsed their bonds in behalf of the state, this act consti-

tutes a statutory mortgage prior in equity to all other claims; that this mortgage was intended to secure the state against its indorsement, and the bonds having come to the hands of complainants as bona fide holders, they are subrogated to the rights of the state, and the lien of the state enures to their benefit.

The failure of the railroad company to execute a trust deed on its property to secure these bonds has placed the bondholders in this embarrassment: that there are no trustees to represent their interest, and they are compelled to appear personally in any suit which affects their interest in the property.

Separate demurrers have been filed to the bill by Andrew J. Lane, by the Montgomery & Eufaula Railroad Company, and by the South & North Alabama Railroad Company. Several of the grounds of demurrer have been avoided by an amendment to the bill. These it is unnecessary to notice. In examining the remaining causes of demurrer, I shall pursue such order as may seem most convenient.

I remark in the outset that the demurrers are filed to the whole bill and not to any specified parts of it. In order, therefore, to sustain the demurrers, the grounds alleged for some of them must extend to the whole bill. Those which refer to or affect only a part of the bill cannot be a ground for a dismissal of the entire bill.

The first ground of demurrer which I shall notice is, that the state of Alabama is not made a party, and no reason is given why she is not made a party. The state cannot be sued in a court of the United States. The eleventh amendment to the constitution of the United States excludes the jurisdiction. She cannot even by her own consent be made a party complainant, for that would oust the jurisdiction of the court, the principal defendant being a citizen of the state of Alabama. As this is matter of law and public statute, of which this court takes judicial notice, it was unnecessary to aver in the bill the reason why the state was not made a party. Does the fact that the state cannot be made a party excuse her absence from the suit, and can the bill be maintained unless she is a party? Where a state is concerned, the state should be made a party if it can be done; that it cannot be done is a sufficient reason for the omission to do it. Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 378; Davis v. Gray, 16 Wall. [83 U. S.] 220. The state is in the position of surety on these bonds on which the suit is based, having received from the railroad company, the principal debtor, indemnity in the form of a statutory lien upon the property of the railroad company. The complainants hold the bonds, and ask a decree against the railroad company for the unpaid interest accrued thereon, and the sale of the property pledged as security; no relief is or can be sought against the state. The state, it is true, is interested in having the pledged property fairly applied to the extinguishment

of its liability, and this court will take care, as it should, that this is done. The fact that the state is thus interested in the property is no reason why she must necessarily be made a party to a suit in which no decree is sought against her. The indorser of a note secured by a mortgage is not a necessary party to a suit to foreclose the mortgage. If the state has paid any interest on these bonds, and is thereby entitled to any part of the proceeds of the mortgaged property, she can propound her claim before the master and it will be allowed. Suppose we turn the complainants out of this court because the state is not a party. If they go into the state court, they are met by the same difficulty, for the state will not allow herself to be sued in her own courts. Can it be possible that these complainants are without remedy against the railroad company because their bonds are indorsed by the plighted faith of the state of Alabama? It would be a reproach to the administration of justice to so hold.

It is set up as another ground of demurrer, that as the state cannot be sued, the complainants cannot be subrogated to the rights of the state under the statutory mortgage which secures the bonds. The law of subrogation is the creation of equity. It is resorted to to prevent a failure of justice. 1 Story, Eq. Jur. §§ 327, 499, 499a, 638; Moses v. Murgatroyd, 1 Johns. Ch. 119. In view of this fact, it would be a strange proceeding for this court, sitting as a court of equity, to deny the right of subrogation in this case, because the state cannot be made a party here, while she refuses to be a party elsewhere.

It is next alleged, as a ground of demurrer to the bill, that in fact there is no statutory mortgage or lien upon the property of the railroad company to secure the bonds held by complainants, because the governor had no authority to indorse these bonds. His indorsement is therefore void. The state incurred no obligation by reason of the manual indorsement of the governor, and consequently no lien was created thereby to indemnify the state. There was no liability against which the state could be indemnified. This claim is based on two grounds: (1) Because the statute authorizes only the indorsement of bonds bearing eight per cent. interest, and these bonds bear eight per cent. interest in gold; and (2) because the statute authorizes the indorsement of first mortgage bonds only, and the Public Statutes of the state of Alabama show that the bonds in suit are not first mortgage bonds.

Does the fact that the interest on the bonds is eight per cent., payable in gold, make the interest greater than eight per cent.? The defendants claim that it does; that of necessity the agreement to pay in gold is an agreement to pay more than eight per cent. in currency. I cannot assent to this. It depends entirely upon contingencies, which cannot be foreseen, whether interest in gold is better than interest in currency. If gold is at a premium

when the interest falls due, then it would take more than eight per cent. in currency to pay the interest. If it is not, it would take just eight per cent. If gold was at a discount, as under many circumstances it might well be, then eight per cent. in currency would more than pay the interest. Suppose the agreement were to pay eight per cent. in demand treasury notes of the United States, which are a legal tender, and they, when the interest was due, happened to be at a premium, as compared with United States notes, also a legal tender, would that really make the rate of interest greater than eight per cent.? When the legislature authorized the indorsement of bonds bearing eight per cent. interest, the fair construction was that it meant eight per cent. in any legal tender currency on which the parties might agree. At the time of the passage of the act "there were two descriptions of lawful money in use under the acts of congress, in either of which damages for nonperformance of contracts, whether made before or since the passage of the currency acts, might be properly assessed in the absence of any different understanding or agreement between the parties." Butler v. Horwitz, 7 Wall. [74 U. S.] 258. But I place my decision upon this point on the ground that a contract to pay eight per cent. interest in gold is not a contract to pay more than eight per cent., because when the interest falls due, gold may happen to be at a premium. This same question substantially has been decided by the supreme court of the United States in Meyer v. City of Muscatine, 1 Wall. [68 U. S.] 391. In that case authority was conferred upon the city of Muscatine to issue bonds bearing a rate of interest "not higher than ten per cent. per annum." The interest on the bonds was made payable semi-annually. This method of payment increased the burden on the city, and was an advantage to the bondholder. It, in fact, and under all circumstances, amounted to a higher rate of interest than ten per cent. per annum. It was objected that by issuing such bonds the authority conferred upon the city was transcended, and a usurious rate agreed to be paid, but the supreme court held otherwise, and sustained the bonds. I am of opinion, therefore, that the governor was not precluded by the law from indorsing the bonds because the interest was payable in gold.

The second ground, upon which it is claimed that the governor was without authority to indorse the bonds is, that there was a prior mortgage upon the railroad company's property, and the bonds indorsed could not, therefore, be first mortgage bonds. Let us concede, what defendants claim, that there was a prior mortgage on the road at the date of these bonds. Were the holders of the bonds under the necessity of taking notice of that fact, and does the fact make the bonds void in the hands of a bona fide holder for value? If the governor was without any authority to indorse any bonds, his in-

dorsement would be void. If the law authorized him to indorse the bonds of the A. & C. Railroad, and he undertook to indorse the bonds of the South & North Alabama Railroad, his indorsement would be void. But in this case there is no dispute that the law authorized him to indorse the bonds of the Montgomery & Eufaula Railroad, on the conditions that there should be completed and equipped twenty miles of road before any indorsement, and that the indorsement should not exceed $16,000 per mile of completed railroad, and that the bonds indorsed should be first mortgage bonds. The authority of the governor to indorse such bonds on such conditions is not disputed. Now, suppose the governor indorses such bonds of a railroad company before twenty miles of its road are completed and equipped, or indorses the bonds at a rate greater than $16,000 per mile, are the bonds on that account void in the hands of a bona fide holder? Clearly not. The unbroken authority of cases decided by the supreme court of the United States is to the effect that such bonds are valid. Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 83; Meyer v. Muscatine, Id. 384. In the case last cited the supreme court says, "that if the legal authority was sufficiently comprehensive, a bona fide holder for value has the right to presume that all precedent requirements have been complied with." See, also, Grand Chute v. Winegur, 15 Wall. [82 U. S.] 355.

But do these authorities cover the case where an indorsement is authorized of first mortgage bonds, and the governor indorses bonds of a railroad company whose property is subject to a prior mortgage? After some hesitation I have come to the conclusion that they do. Unquestionably the duty is imposed on the governor by the internal improvement act, as subsequently amended (Acts 1866, 1867, p. 686), to decide whether the conditions precedent to the indorsement have been complied with. "When any railroad company," says the law, "shall have finished, completed and equipped twenty continuous miles of road, it shall be the duty of the governor, and he is hereby required, to indorse on the part of the state the first mortgage bonds of said railroad company to the extent of $16,000 per mile," etc. It is as much his duty to ascertain that the bonds to be indorsed by him are first mortgage bonds, as it is to ascertain that twenty miles of the railroad have been completed and equipped. These conditions stand on precisely the same ground, namely, that the security of the state for its indorsement may be sufficient. The law not only makes it the duty, but gives the governor the authority to determine these facts, and having determined them, to indorse the bonds. The legal authority to make the indorsement is sufficiently comprehensive to include the indorsement of the bonds in question; and the governor

having placed his indorsement upon the bonds and certified in the indorsement itself that it was made in pursuance of the act of the legislature, I think a bona fide holder has the right to presume that all precedent requirements have been complied with, and that there are no prior liens upon the railroad; and, so far as he is concerned, this presumption cannot be rebutted. But defendants say, that the holders of these bonds are bound to take notice of what is contained in the statutes of the state of Alabama, and that the act approved December 30, 1868 (Laws 1868, p. 497), entitled "An act to authorize the governor to indorse the bonds of the Montgomery & Eufaula Railroad Company, issued under the act of 19th of February, 1867," and its amendments, shows upon its face that the bonds of the railroad company were not first mortgage bonds. This act declares: "That the governor of this state be, and he is hereby, authorized to indorse the bonds of the Montgomery & Eufaula Railroad Company, to the extent authorized by the act to establish a system of internal improvements in the state of Alabama, passed and approved February 19, 1867, and the amendments made to said act, notwithstanding the indebtedness of said company to the state of Alabama for $30,000, and the mortgage made by said company to the state under the act approved 17th February, 1866. Provided, that all sums of money which have been heretofore advanced by the state of Alabama, by the indorsement of bonds hitherto, shall be reckoned and regarded as so much of the amount authorized to be extended to said road by the authority of this act." If this is a valid enactment, it covers completely any want of authority in the governor to indorse the bonds of the railroad company by reason of a prior mortgage. It is a ratification of his indorsement, and makes it good and valid in all respects; this is conceded. But the defendants say, it was not passed by the number of votes required by the constitution of the state for the passage of such an act, and that the journals of the legislature show the fact; that it is therefore null and void, and no law at all. If this position be true, what becomes of the claim, that the bondholders were bound to take notice of its contents? If it is no law, it is not constructive notice to anybody of anything. It is without effect, to all intents and purposes. It cannot be said that a bondholder in Europe or New York is bound by constructive notice of an act that never passed the legislature, but which by some mistake of the printer, or some one else, found its way among the published acts of the state. I am of opinion, therefore, that the bonds of the Montgomery & Eufaula Railroad Company in the hands of bona fide holders are valid, that the indorsement of the governor is valid, and that by said indorsement the state acquired a valid lien upon said railroad property, superior to all other liens, unless it be that of the South & North Alabama Railroad Company. Whether the lien of complainants is better than that of the South & North Railroad Company, it is not now necessary to decide.

I have noticed all the grounds of demurrer which go to the entire bill, and am of opinion that none of them are well taken, and the demurrer must therefore be overruled.

A question, raised by one of the grounds of demurrer and much discussed during the argument, was whether this court would, if the bill was sustained, appoint a receiver to take possession of the property of the defendant railroad company, according to the prayer of the bill. It seems to me that there can be but one answer to this question. It appears from the bill that a suit to foreclose the second mortgage, executed by the defendant railroad company, is now pending in the United States circuit court for the Southern district of Alabama; and that in that case the defendant Lane has been appointed receiver, that he has taken possession of all the mortgaged property, and is administering it under the order and directions of the court. If there are any adjudged cases which would authorize this court to interfere with the possession of a receiver appointed by another court having jurisdiction, and who is in actual possession of the property, they have never fallen under my observation. The authorities all sustain the contrary doctrine. Smith v. McIver, 9 Wheat. [22 U. S.] 532; Williams v. Benedict, 8 How. [49 U. S.] 107; Wiswell v. Sampson, 14 How. [55 U. S.] 52; Taylor v. Carryl, 20 How. [61 U. S.] 583; Chittenden v. Brewster, 2 Wall. [69 U. S.] 191; Mallett v. Dexter [Case No. 8,988]; Alabama & C. R. Co. v. Jones [Id. 127]; Memphis City v. Dean, 8 Wall. [75 U. S.] 64. These authorities show that a question, which is pending in one court of competent jurisdiction, cannot be raised and agitated in another court; much less can one court assume to take possession of and administer property which is in the possession of another court and in course of administration by it. Nor is the case for the appointment of a receiver by this court aided by the leave granted to complainants by a judge of the court, wherein the other suit is pending, to sue the receiver appointed in such other suit. It is clear the leave given did not contemplate such a proceeding as the removal of that receiver by this court. No court or judge would be authorized to grant such a leave ex parte, and thus dispose of valuable rights and advantages of other parties, without at least giving them their day in court.

There are no averments in the bill which would justify the court which appointed Lane receiver in removing him from his trust. And no matter what showing the complain-

ants may be able to make as to the incompetency, unfitness, or dishonesty of the receiver, this court cannot act. That showing must be made to the court which appointed him, and it must be asked to remove him. If these complainants are not satisfied with the manner in which the suit and proceedings of Strang v. Railroad Co. [Case No. 13,523] are conducted in the United States circuit court for the Southern district of Alabama, they must become, if they can, parties to that suit, and make their complaints to that court. This court does not sit to revise or review the proceedings of that court. Any motion, therefore, to appoint a receiver in this case, while the property to be administered is in the possession of another court, must be overruled, and this court can entertain no motion to remove or otherwise interfere with a receiver appointed by another court.

I add a few words in regard to the relations which the two cases referred to bear to each other. That suit was commenced by the holders of second mortgage bonds. They did not see fit to make the holders of the first mortgage bonds parties, nor was it necessary for them to do so. Calv. Parties, 13, 14; Story, Eq. Pl. § 193. They have the right to proceed to a decree and sell the mortgaged property, but the sale must necessarily be made subject to the lien of the first mortgage bonds. The holders of these bonds are not parties, and can only be made parties by service of process or voluntary appearance. No general notice calling on them to present their claims will make them parties or bind them. If they were represented in the case by trustees, then a notice calling upon them to present their bonds before the master would be binding. But they are in no way represented in that suit. Their rights cannot therefore be affected by any decree in that case. Campbell v. Railroad Co. [Case No. 2,366]. They have the same right to commence suit on this mortgage as the holders of second mortgage bonds have on theirs. But as the latter have commenced their suit first, and have first obtained possession of the mortgaged property, the suit of the first mortgage bondholders cannot be allowed to interfere with the suit of the second mortgage bondholders. They can only interfere by being admitted as parties in that suit. When the suit of the second mortgage bondholders has ripened into a decree of sale and the property has been sold, the first mortgage holders may then proceed in their suit to subject the property again to sale to satisfy their lien. But not till the proceedings in the first suit have so resulted that the property is no longer in the possession of the court through its receiver, can any other court or parties interfere with it.