# Spence *v.* Mobile & Montgomery Railway Co.

*Bill in Equity by Bondholders, to enforce Equitable Mortgage on Railroad.*

1. *Consolidation of railroad companies; provisions preserving rights and remedies of creditors, but authorizing sale of property by new company.*—By the 5th section of the act ratifying the consolidation of the Alabama and Florida Railroad Company and the Mobile and Great Northern Railroad Company, under the name of the Mobile and Montgomery Railroad Company, the new company was authorized to issue bonds, secured by mortgage or deed of trust "on the road, franchises and property of said company;" while the 6th section, after declaring that the consolidation "shall in no way affect the rights of the creditors of said [original] companies, and their separate existence shall be continued as to all the rights and remedies of creditors," further provided, that the new company "may dispose of any property, real or personal, held by each of said [original] companies, and make and execute titles for the same." *Held,* that this power of sale was confined to such property as was not needed for operating the road—surplus lands, and probably personal effects not in present use, nor required for use on the road—releasing such property only from the charge or incumbrance of existing debts, and permitting it to be utilized.

2. *Commercial bonds or paper; protection to purchaser.*—A purchaser of negotiable bonds, or other commercial paper, in good faith, for valuable consideration, and before maturity, is entitled to protection, although he may have had suspicion of a defect of title, or knowledge of circumstances sufficient to excite such suspicion in the mind of a prudent man, and even although he may have been guilty of gross negligence; and this protection equally extends to a mortgage, or other security, given for such commercial paper or bond.

3. *Protection to purchaser of property, or of non-commercial paper.*—On a purchase of property, or of non-commercial paper, information or notice of any fact or circumstance calculated to excite suspicion, and which,

[Spence v. Mobile & Montgomery Railway Co.]

if followed up, would lead to the discovery of a latent equity or defect of title, is the equivalent of actual notice.

4. *Purchasers from corporation.*—Persons dealing with a corporation are required, at their peril, to inform themselves of the fact that it has a legal existence, and of the extent of the powers conferred by its charter; and they are chargeable with notice of every fact which would be disclosed by the act of its incorporation, or other acts therein referred to.

5. *State-indorsed railroad bonds; rights of purchasers, as against prior equity, or unrecorded mortgage.*—The bonds issued by the M. & M. Railway Company, under the authority of the act approved February 25th, 1870, and indorsed by the governor in the name of the State, purporting on their face to be first-mortgage bonds, and referring to the said statute, which required that the first million and a half of said bonds should be used only in purchase and exchange for the bonds of the M. & M. Railroad Company, to whose rights and property said M. & M. Railway Company had succeeded; but containing no reference to the act of August 5th, 1868, under which said M. & M. Railroad was incorporated, by the consolidation of the A. & F. Railroad Company and the M. & G. N. Railroad Company, nor to the charge and incumbrance thereby declared in favor of the creditors of said original companies; and being put on the market for sale, with the State's indorsement; a purchaser might well rely on their recitals, presume that all the requirements of the statute had been complied with, and claim protection against any prior lien or equity in favor of the State or said M. & M. Railway Company. But the acts of the officers and agents of the State, and of said railway company, could not affect the rights of the creditors of said original railroad companies, as preserved and secured by the terms of the consolidation, they not being parties to the chancery suit foreclosing the mortgage, under which said new railway company derived title; and the charge in favor of said creditors being expressly declared by said act of incorporation and consolidation, a purchaser of said new bonds is chargeable with notice of it, although a mortgage securing said debts, as recited in the agreement of consolidation, may never have been recorded, or in fact never existed.

6. *Confederate currency, as consideration for purchase of railroad bonds.*—Railroad bonds, issued in 1862-3, and sold for Confederate currency, being enforced as an equitable mortgage against subsequent purchasers of the railroad franchise and property, the plaintiff's recovery is limited to "the purchasing value of the currency thus paid, at the time of the purchase, with interest on that value."

APPEAL from the Chancery Court of Montgomery.
Heard before Hon. JOHN A. FOSTER.

The bill in this case was filed on the 13th June, 1882, by Samuel Spence and E. H. Muse, against the Mobile and Montgomery Railway Company, the Louisville and Nashville Railroad Company (as lessee, and in possession of the road and other property of said former corporation), and the Alabama and Florida Railroad Company; and sought to declare and enforce, as a lien and charge on the property which had once belonged to the railroad company last named, and which the other companies claimed and held as derivative purchasers from it, two bonds which the complainants held, and which had been issued by said Alabama and Florida Railway Company. The bonds were signed by the president and treasurer of said railroad corporation, numbered 4 and 5, purported to be part of an

37

"issue of $300,000 to fund floating debt of company," and in the following form: "On the first day of July, 1872, the Alabama and Florida Railroad Company of Alabama will pay to the bearer of this bond, at the Georgia Railroad and Banking Company, Augusta, Georgia, the sum of one thousand dollars, with interest thereon from this date, payable semi-annually, at the rate of eight per cent. *per annum*, on surrender of the annexed warrants, or coupons; and to secure which a third mortgage has been executed on the road, outfit, and lands of the company. In witness whereof, the president and treasurer of said company have signed this bond, and the seal of said company has been hereunto affixed, at Montgomery, Alabama, this 1st day of July, 1862."

Attached to each bond were twenty coupons, each for $40 interest, payable to bearer, on the first day of January and July in each year, at the office of said Georgia corporation. The complainants alleged, in their bill, that said bonds "were secured, as they purported on their face to be, by a mortgage on the road, outfit and lands of said company, and were negotiated and disposed of as such;" that complainants "now are and were *bona fide* owners and holders of said bonds, for a valuable consideration, at and before the time when the road, outfit and lands of said railroad company went into the possession of the said Mobile and Montgomery Railway Company; that said last named company took possession of said property with notice of the issue of said bonds, and that all of them had not been paid; and orators aver that said bonds were and are a first lien upon said property, and the same is now liable for the payment thereof." The bill stated the facts, which are also stated in the opinion of the court, showing the incorporation of the Mobile and Montgomery Railroad Company, which was formed by a consolidation of the said Alabama and Florida with the Mobile and Great Northern Railroad Company, the rights and remedies of the creditors of each of the old corporations being expressly declared and preserved by the 6th section of the act authorizing the consolidation and incorporation under the new name; and that all of the said series of bonds, except the two held by the complainants, had been paid and taken up, either by the Mobile and Montgomery Railroad Company, its successor, the Mobile and Montgomery Railway Company, or the Louisville and Nashville Railroad Company, after its lease of the road. The prayer of the bill was, "that a decree be rendered establishing the said bonds and coupons as a lien upon the road, outfit and lands, which were formerly owned by the Alabama and Florida Railroad Company, and which, by the terms of consolidation, passed into the possession of the said Mobile and Montgomery Railroad Company, and afterwards into

[Spence v. Mobile & Montgomery Railway Co.]

the possession of the Mobile and Montgomery Railway Company, and into the possession of the Louisville and Nashville Railroad Company as lessees; and that the same be sold for the payment of the amount found to be due on said bonds and coupons; or for such other and further relief as may seem meet and proper."

An answer to the bill was filed by the Mobile and Montgomery Railway Company, which was adopted by the Louisville and Nashville Railroad Company; admitting the incorporation of the Alabama and Florida Railroad Company, its ownership of the road, outfit and lands, as alleged in the bill, and its consolidation with the Mobile and Great Northern Railroad Company into a new corporation, called the Mobile and Montgomery Railroad Company; but alleging that, at the time of the consolidation, each of the old corporations was insolvent, and its property was subject to liens and mortgages far exceeding its value. As to the bonds held by the complainants, and other bonds of the same series, the answer contained these statements: "Respondent does not know, and can not admit or deny, that said bonds purported to be secured by a third mortgage, or were negotiated and disposed of as secured by a third mortgage on the road, outfit and lands; but respondent states, that no mortgage, or other instrument, was ever executed to secure said bonds, or either of them, and that the third mortgage mentioned in said bonds was never made or executed. Respondent is not advised as to how many of said bonds were taken up by the Alabama and Florida Railroad Company, or by the Mobile and Montgomery Railroad Company; but some of them, amounting to about $40,000, were presented to this respondent as constituting a lien on the property of the said two railroad companies which passed into the hands of this respondent; and respondent denies that said bonds constituted any lien or charge on said property. Afterwards, in compromise and adjustment of said claim, respondent purchased said bonds, at a sum considerably less than the amount of the principal and interest thereof; but the Louisville and Nashville Railroad Company has never purchased, nor otherwise taken up any of said bonds. Respondent admits that said two bonds, the foundation of this suit, were not taken up or paid, but denies that they constitute any lien or charge upon the property in the hands of this respondent. Respondent does not know how complainants became possessed of said bonds, or what they paid for the same, or whether they were *bona fide* owners and holders at the time said road and property passed into the possession of this respondent; and respondent expressly denies that it took possession of said property with notice, actual or constructive, of the issue of said bonds, or

[Spence v. Mobile & Montgomery Railway Co.]

that all of them had not been paid." The answer further stated, by way of plea, that said bonds were issued in July, 1862, and were purchased by complainants for Confederate currency, which was then only worth about fifteen dollars for one; and insisted that the complainants, if entitled to recover at all, should only recover their actual value in good money at that time.

The answer also stated, at length, the facts connected with the issue of bonds by the Mobile and Montgomery Railroad Company, secured by a mortgage on its road and property, and indorsed by the State, the foreclosure of that mortgage under a decree in chancery, the purchase for the benefit of the bond-holders, and their subsequent incorporation under the name of the Mobile and Montgomery Railway Company; but, these facts being fully stated in the opinion of the court, it is not necessary to repeat them here. One of the bonds of the Mobile and Montgomery Railroad Company was made an exhibit to the answer; and it is referred to in the note of the testimony, but is not incorporated in the transcript. By agreement of counsel, entered of record, all of the acts incorporating the several railroad companies, and the other acts referred to in the opinion of the court, are to be deemed a part of the record.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, holding that the Mobile and Montgomery Railway Company was not chargeable with notice, actual or constructive, of any lien or charge in favor of the complainants, on the property which had once belonged to the Alabama and Florida Railroad Company. The chancellor's decree is now assigned as error.

SAYRE & GRAVES, for appellants.—By the terms of the agreement for the consolidation of the A. & F. Railroad Company and the M. & G. N. Railroad Company, and the legislative act authorizing and effecting the consolidation of the two companies under a new name, the rights of the creditors of the old companies were expressly reserved ; the property of the old companies passed into the possession of the new company, charged with the payment of all the debts then existing against it; and all the powers granted to the new company, as to the sale or other disposition of the property acquired under the consolidation, were restricted and made subject to the reserved rights of creditors. The reservation is in favor of all creditors, whether secured or unsecured ; and it is therefore immaterial whether the complainants' debts were, or were not, in fact secured by a mortgage, as recited in the terms of consolidation, and shown by the evidence; and it is equally immaterial

whether or not the mortgage was ever recorded. The act of consolidation is the charter of the new corporation, and all persons dealing with it are charged with notice of all its recitals and provisions, as also of other legislative acts therein referred to. Persons dealing with a corporation are bound, at their peril, to inquire into and ascertain the fact of its corporate existence, and the extent of its powers; and purchasers of property from it are chargeable with notice of every deed or other instrument which constitutes a link in the chain of title, and are put on inquiry, just as purchasers from a private person. Nothing that was done, and nothing that could have been done, by and between the new company, the trustees appointed in its new mortgage, and the purchasers at the sale made by the trustees, could take away or affect the reserved rights of the old creditors; nor could they be injured by the State's participation in any of those acts or proceedings. The character of the paper secured by a mortgage, or deed of trust, whether commercial or non-commercial, does not affect the title to the property conveyed, or the rights of a purchaser of that property. If the mortgagor had no title to the property, or if other persons had valid claims on it, a purchaser at the mortgage sale acquires no superior right or title, because the secured debt was evidenced by commercial paper. In support of these propositions, see *M. & W. P. Railroad Co. v. Branch*, 59 Ala. 153; Jones on Railroad Securities, §§ 73–75, 363; *Le Neve v. Le Neve*, 2 White & Tudor's L. C. Eq. 152–60; *Jackson v. Caldwell*, 1 Cow. 642; *Grand Lodge v. Waddell*, 36 Ala. 313; *Marks v. Cowles*, 61 Ala. 305; *Casey v. Holmes*, 10 Ala. 786; *McMullen v. Read*, 60 Ala. 572; *Johnson v. Thweatt*, 18 Ala. 747; *Pearce v. Railroad Co.*, 21 How. 443; *Comm'rs v. Aspinwall*, 21 How. 545; Green's Brice's *Ultra Vires*, 429, note 397, 159; Ang. & A. Corp., § 299.

THOS. G. JONES, and WATTS & SON, *contra.*—(1.) The complainants, under the pleadings and proof, are only simple-contract creditors of the A. & F. Railroad Company, having no mortgage lien; and if they ever had a mortgage, it was never recorded, as required by law, and is therefore inoperative as against subsequent creditors and purchasers. (2.) If they have an equity, it grows out of the legislative act consolidating the two railroad companies; and this equity, though prior in point of time, can not prevail against the junior equity of the defendants, coupled with their possession and legal title, acquired by their purchase under the decree of foreclosure.—2 Story's Equity, § 1503; 2 L. C. Eq. 102; 5 H. L. Cases, 905; *Dixon v. Brown*, 53 Ala. 430; *Johnsonbury v. Morrill*, 55 Vt. 165–70. (3.) The rights and equities of the defendants accrued

on their purchase of the bonds of the new railroad company; and the bonds being negotiable, and purchased for value, in good faith, before maturity, without knowledge or notice of any outstanding equity, the purchasers are entitled to protection, if, under any circumsances, the railroad company could make a mortgage which would bind the property.—*Knox Co. v. Aspinwall*, 21 How. 539; 92 U. S. 490; Dill. Mun. Corp., § 419; *State v. Cobb*, 64 Ala. 127; *Gelpke v. Dubuque*, 1 Wallace, 203. (3.) The legislative act consolidating the two railroad companies, and creating another corporation under a new name, preserved the rights and remedies of creditors, but conferred no new rights on them, nor created any statutory mortgage on the property, in favor of unsecured creditors, as against subsequent *bona fide* purchasers; and it expressly authorized the new company to issue bonds, "to secure the same by mortgage or deed of trust on the road, franchises and property of said company," to "dispose of any property, real or personal, held by each of said companies, and make and execute titles for the same." If the A. & F. Railroad Company had executed a mortgage on its property, the complainants, as unsecured creditors, could not have complained of it; nor can they complain of a mortgage executed by the new company, conveying property on which they had no lien. (4.) In *M. & W. P. Railroad Co. v. Branch*, 59 Ala. 154, cited for appellants, there was no question as to a *bona fide* purchase for value without notice; and therein that case is distinguishable from this. *Miss. Valley Co. v. Chicago Railroad Co.*, 58 Miss. 846, or Amer. & Eng. R. R. Cases, 575. (5.) If the purchasers of the new bonds are chargeable with notice, not only of the legislative act of consolidation, but also of the proposition to consolidate as shown by the resolutions; then they would also have learned, and must be presumed to have known, that complainants' debts were for "third-mortgage bonds, issued in 1862, for Confederate money;" which, as settled by the decisions of this court at that time in force, were without consideration, and could not be enforced in the courts.—*Hale v. Houston*, 44 Ala. The subsequent change in the decisions of this court, as to the validity of such bonds, can not operate retrospectively, to the prejudice of the defendants' rights.—*Hardigree v. Mitchum*, 51 Ala. 151. (6.) The averments of the bill are not sufficient to place the complainants in the attitude of *bona fide* purchasers for value.—*Walker v. Ledbetter*, 31 Ala. 175; *Buford v. McCormick*, 57 Ala. 428; *Gresham v. Ware*, at present term, *ante*, 192. (7.) The complainants are estopped by their long silence and negligence, while the defendants were expending thousands of dollars in repairing and improving the property which they had bought in good faith, from now as-

serting any unknown lien or equity they may have once had. *Kent v. Mining Co.*, 78 N. Y. 187; 60 Penn. St. 319; 78 Penn. St. 391; Pomeroy's Equity, § 818.

STONE, C. J.—Two railroad corporations—the Alabama and Florida Railroad Company of Alabama, and the Mobile and Great Northern Railroad Company—had separate meetings of their stockholders, and at such separate meetings, each of said corporations agreed to a common basis of consolidation, submitted to them, by which they became one corporation under the new name, "The Mobile and Montgomery Railroad Company." The proposition, thus submitted and acted on, contained a statement of what purported to be the financial condition of each of the corporations. The Alabama and Florida Railroad Company was reported as owing first and second mortgage debts amounting to about eleven hundred thousand dollars, a third mortgage debt of three hundred and fifty thousand dollars, and a floating debt. The mortgage debts were evidenced by coupon bonds, in the form of commercial paper, and were secured by mortgages on the railroad and its property, as was expressed on the face of the bonds. The third mortgage bonds were issued during the civil war, and, it is alleged, were sold for Confederate money. The report and proposition so made to the two companies, and acted on by them, was in writing, and, together with the action of the two corporations thereon, was spread on the records of the Alabama and Florida Railroad Company. This record showed the statement of the debts above referred to, and the book containing it became the record book of the Mobile and Montgomery Railroad Company, from that time forth. In the proposition for consolidation, thus submitted and acted on, it was proposed that, after the consolidation should be perfected, the new corporation should issue new coupon, commercial bonds, secured by mortgage on the consolidated road, for the purpose, in part, of paying the debts of the old corporations, and, in part, to provide a fund for the repair and completion of the consolidated road. All these propositions were agreed to, at the several stockholders' meetings. On the 5th day of August, 1868, the act was approved "to consolidate and make joint stock of the Mobile and Great Northern Railroad Company, and the Alabama and Florida Railroad Company of Alabama, and to change the name of said companies to the Mobile and Montgomery Railroad Company."—Sess. Acts, 1868, p. 82. By said act it is declared, "That in accordance with the action of the stockholders of the Alabama and Florida Railroad Company, of Alabama, at the convention held on the 10th day of March, 1868, and with the action of the stockholders of the

Mobile and Great Northern Railroad Company, at their convention held on the 13th and 14th days of March, 1868, full authority is hereby given to said companies to make joint stock of the stock of the two companies, and to consolidate said companies into one corporation, by the corporate name of the Mobile and Montgomery Railroad Company." The act also conferred on the new company the franchises and property-rights of the old companies, and authorized the new company "to issue bonds, payable at such times and places, and bearing such rate of interest as they may deem desirable, and to secure the same by mortgage or deed of trust on the road, property and franchises of said company," and to dispose of the bonds, *etc.* The sixth section of said act is in the following language: "That the consolidation of the said Alabama and Florida Railroad Company with the said Mobile and Great Northern Railroad Company, and the change of the name of the said companies, as provided for in the foregoing sections of this act, shall in no way affect the rights of the creditors of the said companies, and their separate existence shall be continued as to all the rights and remedies of creditors, and the president of said Mobile and Montgomery Railroad Company shall be held in law, as to service of process, as the president of the said Alabama and Florida Railroad Company, and of the Mobile and Great Northern Railroad Company; and the said Mobile and Montgomery Railroad Company may dispose of any property, real or personal, held by each of said companies, and make and execute titles for the same, and may sue for and recover in its name all debts, dues and demands, of every kind and description whatever, due to each of said companies."

Under the statute of August 5th, 1868, the Mobile and Montgomery Railroad Company, having organized, issued its commercial coupon bonds to the amount of two and a half millions; and, to secure their payment, executed to trustees a mortgage, conveying to them, for such purpose, the franchise and all the property of said Mobile and Montgomery Railroad Company. The bonds so issued were put on the market, and sold to purchasers. The *bona fide* sale of these new bonds is not questioned, nor is any question raised on the sufficiency of the consideration paid for them.

The Mobile and Montgomery Railroad Company made default in the payment of its interest on said coupon bonds, and thereupon the trustees sought and obtained, by bill in chancery, a foreclosure of said mortgage. Neither the Alabama and Florida Railroad Company, the Mobile and Great Northern Railroad Company, nor any of the creditors of either, were made parties to said suit. Under a decree rendered in said cause, the franchise and entire property of the Mobile and

Montgomery Railroad Company was brought to sale, and the trustees became the purchasers, in trust for the bondholders. The latter thereupon incorporated themselves, under the corporate name of the "Mobile and Montgomery Railway Company." The present suit is against the last named corporation, and is prosecuted by third mortgage bondholders of the Alabama and Florida Railroad Company,—their bonds not having been paid. The purpose of the suit is, to subject to the payment of their said claim that portion of the consolidated road which was originally the property of the Alabama and Florida Railroad Company. Their suit is rested on the sixth section of the act approved August 5th, 1868, and on the report and proposition submitted, on which the consolidation proceedings were had by the original companies.—*M. & W. P. R. R. Co. v. Branch,* 59 Ala. 139.

Section 6 of the act ratifying the consolidation provides, that such consolidation "shall in no way affect the rights of the creditors of such companies, and their separate existence shall be continued as to all the rights and remedies of creditors." Immediately in connection with this provision, and separated from it only by a comma, is this language: "And the said Mobile and Montgomery Railroad Company may dispose of any property, real or personal, held by each of said companies, and make and execute titles for the same." It is contended, that this second clause confers a right to sell the entire road and property; and when so sold, the liability resting on the original roads, for their unpaid debts, would necessarily cease. This, it is claimed, distinguishes this case from *M. & W. P. R. R. Co. v. Branch, supra.* There are several reasons why we can not adopt this interpretation. It would render almost, or quite nugatory, the connected clause which preserves and continues the old corporations, so far as their debts are concerned. It would be somewhat a duplication of the power, conferred by the fifth section, to make a "mortgage or deed of trust on the road, property and franchises of the company." It authorizes the sale of only real and personal property, saying nothing of the franchise, while the fifth section expressly authorizes the mortgage of the franchise. We should so construe the statute, as to give to each clause some operation, if we can. We accomplish this object by holding, as we do, that the authority to sell and convey real and personal property .which had belonged to the original corporations, was confined to such property as was not needed for running or operating the road, surplus lands, and probably personal effects, not in present use, nor required for use on the road. The clause immediately preceding had fastened a charge. This was intended to release the property not needed, and also "dues and demands of every kind

[Spence v. Mobile & Montgomery Railway Co.]

and description," from that charge and incumbrance, and permit them to be utilized.

The important question in this case arises out of the inquiry, Were the purchasers of the bonds, known as first-mortgage bonds of the Mobile and Montgomery Railroad Company, chargeable with notice of this prior incumbrance or charge, resting on that part of the consolidated road, which was formerly the Alabama and Florida Railroad Company of Alabama? If they were, then the complainant in this case is entitled to recover. Otherwise, not. We may premise, that the proof fails to show satisfactorily that the alleged third mortgage of the Alabama and Florida Railroad Company was ever executed, although there is some proof pointing in that direction. But, if executed, there is a failure of proof that it was ever recorded. This, however, is immaterial. The present suit claims relief in equity ; and if the purchasers of the consolidated road's bonds are chargeable with notice of the liability resting on the original roads, as preserved by the act of consolidation, then such purchasers can not claim the immunity which purchasers, in good faith, of commercial paper can assert. This would leave the third-mortgage bonds of the Alabama and Florida Railroad Company an equitable charge on that part of the consolidated road.— *White Water Valley Co. v. Valleth*, 21 How. U. S. 414; *Young v. M. & E. R. R. Co.*, 2 Woods, 606 ; Jones' Eq. Mortgages, § 73 ; *Miller v. R. & W. R. R. Co.*, 36 Ver. 452; *M. & W. P. R. R. Co. v. Branch*, 59 Ala. 139.

The rules as to notice, sufficient to charge a purchaser of commercial paper before maturity, are widely different from those which obtain in the purchase of property and of non-commercial paper. "A purchaser of negotiable bonds before due, for a valuable consideration, in good faith, and without what is equivalent to *actual* knowledge or notice of a defect of title, holds them by a title valid as against every other person. Even gross negligence at the time of purchase does not, alone, defeat the purchaser's title. A purchaser may have had suspicion of a defect of title, or knowledge of circumstances which would excite such suspicion in the mind of a prudent man ; or he may have disregarded notices of stolen bonds ; and yet, if he has purchased for value in good faith, his title can not be impeached.  .  .  .  It must be shown that he did not purchase honestly."—Jones' Railroad Securities, § 207; 2 Danl. Negotiable Instruments, §§ 1502–3 ; *Murray v. Lardner*, 2 Wall. 110; *Galveston R. R. Co. v. Cowdry*, 11 Wall. 459; *St. John Township v. Rogers*, 16 Wall. 644. And when a negotiable bond, or other negotiable instrument, is thus purchased, a mortgage given to secure its payment is alike protected against latent defenses, as is the instrument it is intended

[Spence v. Mobile & Montgomery Railway Co.]

·to secure. Such negotiable instruments—particularly railroad bonds—derive their strength, solvency, and negotiability, from the mortgaged railroad which puts them on the market. Withdraw from them this support, and their negotiability at once perishes.—*Hawley v. Bibb*, 69 Ala. 52; *Carpenter v. Logan*, 16 Wall. 271; *Kennicott v. Supervisors, Ib.* 452; 1 Jones' Mort. § 834; 1 Hilliard Mort. 526; 1 Danl. Neg. Instr. § 834; *Taylor v. Page*, 6 Allen, 86; *Martineau v. McCollum*, Chand. (Wis.) 153; *Cornell v. Hickens*, 11 Wis. 353; *Pierce v. Farmer*, 47 Me. 507; *Cicoth v. Gagnin*, 2 Mich. 381; *Blower v. Henderson*, 8 Mich. 394; *Potts v. Blackwell*, 1 Jones' Eq. 58; *Fisher v. Otis*, 3 Chand. 53; *Croft v. Bunsterm*, 9 Wis. 503. See. also, *Town of Colona v. Eaves*, 92 U. S. 484; *Bissell v. City of Jeffersonville*, 24 How. 287; *Moran v. Com'rs*, 2 Black, 722; *City of Elizabeth v. Force*, 29 N. J. Eq. 587; *Deming v. Inhab. of Holton*, 18 Am. Rep. 253, and note.

Two States—Ohio and Illinois—depart from the general ruling, which extends the immunity accorded to negotiable instruments to the mortgages given to secure their payment. *Bailey v. Smith*, 14 Ohio St. 396; *Kleeman v. Frisbie*, 63 Ill. 462. And in 2 Pom. Eq. § 708, n. 1, the reasoning of these cases is commended. Our ruling in *Hawley v. Bibb, supra*, is supported by the great weight of authority.

The rule in regard to purchasers of property is, that any information or notice to the purchaser, of any fact or circumstance calculated to excite suspicion, and which, if followed up, will lead to a discovery of the latent equity, or defect of title, is the equivalent of actual notice.—*Le Neve v. Le Neve*, 2 Lead. Cas. in Eq. 35; *Milhous v. Dunham*, 78 Ala. 48; *Hodges v. Coleman*, 76 Ala. 103; *Dudley v.·Witter*, 46 Ala. 664; *Marks v. Cowles*, 61 Ala. 299; *Center v. P. & M. Bank*, 22 Ala. 743; *Wilson v. Wall*, 34 Ala. 288.

The bonds issued by the Mobile and Montgomery Railroad Company, as we have shown, were put on the market and sold, and the holders of them had the mortgage foreclosed, the railroad, its equipment and franchise sold, and themselves became the purchasers. It is not pretended they had actual notice of the charge left on the consolidated road, by the agreement and act of consolidation. The bonds under which the later corporation, the Mobile and Montgomery Railway Company, asserts title, expressly refer to the statute "to authorize the governor of the State of Alabama to indorse, on the part of the State, the first-mortgage bonds of the Mobile and Montgomery Railroad Company," approved February 15th, 1870.—Sess. Acts, 1869–70, p. 175. They also refer to the mortgage, on its face styled a first mortgage, made to secure the payment of said bonds. Neither the mortgage nor the bonds make any

reference to the act of consolidation and incorporation of August 5th, 1868, stated above. The later act makes no allusion to the charge left on the original roads by the agreement made part of the act of consolidation. By its terms and provisions, it is shown that one million five hundred thousand dollars of these bonds were designed and set apart specially to "first pay off, satisfy, and discharge all the existing liens on the said railroad, outfit and equipment, so that the State of Alabama shall have a first and only lien on the said railroad, outfit and equipment." Other provisions of the statute are such that the said million and a half of bonds could only be used in paying the old indebtedness resting on the road ; and the bonds could only be delivered by the governor, in performance of an agreed arrangement, by which the new, indorsed bonds were to be given in exchange for the old. If these statutory requirements had been faithfully adhered to, not a dollar of these first million and a half of bonds would have passed from the governor's hands, except in exchange for old indebtedness, until that entire indebtedness was taken up; and the last of said million and a half could be delivered only when the outstanding, old indebtedness had been cancelled within one hundred thousand dollars of its full amount. And by the second section of said act it is provided, that "Whenever the governor of the State of Alabama is satisfied that all of the existing liens on the said railroad, outfit and equipment have been discharged, and the State of Alabama has a first and only lien on the said railroad, outfit and equipment, and satisfactory evidence is submitted to him that the said Mobile and Montgomery Railroad Company have let out, to good and responsible parties, the building of their road from its present terminus at Tensas to the city of Mobile, the governor is hereby authorized and required to indorse, on the part of the State of Alabama, the other one million of dollars of the first-mortgage bonds of the said railroad company." By these provisions it will be seen that, until the entire old indebtedness on the road was cancelled, the last million of the bonds could not be indorsed ; and the first million and a half could only be surrendered by the governor, in liquidation of the old lien indebtedness. The entire two and a half millions were indorsed by the governor, delivered to the railroad officials, and sold in the market. It was the governor's duty to satisfy himself by proof that all these conditions were complied with, before he was authorized to surrender the bonds. Finding the bonds in market, each having the governor's indorsement, the purchasing public was justified in inferring that all conditions precedent had been complied with ; that the entire old debt had been cancelled, and that the mortgage security was what its face, the bond, and the statute all

[Spence v. Mobile & Montgomery Railway Co.]

declared it was, a first mortgage. This, if there be nothing else, placed the boudholders on the high vantage-ground of pur chasers of commercial paper, without notice.—*Mercer County v. Hackett*, 1 Wall. 83; *Van Hostrp v. Madison City*, *Ib.* 291; *Supervisors v. Schenck*, 5 Wall. 772; *Belo v. Comm'rs Forsythe Co.*, 76 No. Car. 489; *Comm's Knox Co. v. Nichols*, 14 Ohio St. 260 : *Com. Mut. Life Ins. Co. v. C. C. & C. R. R. Co.*, 41 Barb. 9; *Welch v. Sage*, 47 N. Y. 143; *N. O.. J. & Gr. Nor. R. R. Co. v. Mississippi College*, 47 Miss. (5 Morris) 560.

But there is another view of this question. Corporations are artificial persons, and, with us, exist only by positive law. They are the creatures of special statutory enactment, or of incorporation under some general law, conferring the authority. All persons dealing with them are burdened with the duty of informing themselves that they have a legal existence, and that they are clothed with the powers they propose to exercise. Being bound to inform themselves of the extent of the corporate powers, they must needs examine the act of incorporation which confers the powers. Like the investigator of a land title, they must examine all the links in the chain, and are charged with knowledge of any fact such examination would disclose.—*Dudley v. Witter*, 46 Ala. 664. Examination of the act of incorporation in this case would have disclosed the fact, "that the consolidation of the said Alabama and Florida Railroad Company, with the said Mobile and Great Northern Railroad Company, and the change of the name of the said companies, as provided for in the foregoing sections of this act, shall in no way affect the rights of the creditors of said companies, and their separate existence shall be continued as to all the rights and remedies of creditors." The bond purchasers, then, must be held to have known of these old debts which incumbered the property.—*Board of Com'mrs v. Aspinwall*, 21 How. U. S. 539; *Com. Mut. Ins. Co. v. C. C. & C. R. R. Co.*, 41 Barb. 9, 27; *The Floyd Acceptances*, 7 Wall. 666; *Marsh v. Fulton Co.*, 10 Wall. 676; and authorities on brief of counsel.

It must be confessed that this is a very hard case. The bonds were issued as first mortgage bonds, under the act approved February 25th, 1870. That act gave no notice of any debt, which could be outstanding when the bonds were offered for sale; for, by the very terms of the act, the offer of the bonds for sale was an official certification, by the State's executive head, that all prior liens and incumbrances on the road had been paid and cancelled. There was no authority for delivering the bonds until such payment had been made. The bonds referred to this statute, as an authority for their issue;

[Morton & Bliss v. N. O. & Selma Railway Co.]

and referred to the mortgage as a *first* mortgage, to secure their payment. Well might the bond-purchasers feel secure in the belief that the bonds, for which they parted with their money, had a first and only lien on the road and its property, for their ultimate payment.

All these, however, were the acts of the railroad's officials and the State's officers. The holders of the claims against the two original corporations, preserved by the act of consolidation, were not consulted, took no part in the issue or sale of the new bonds, or in the giving of the mortgage, and hence can not be concluded by anything that was done. The agreement and act of consolidation had left their claims a charge on that part of the consolidated road which had been known as the Alabama and Florida Railroad of Alabama, and they had done nothing to waive or cancel the charge. The legislature could not, without their consent, deprive them of this right.—*Caylus v. N. Y., K. & S. R. R. Co.*, 10 Hun, 295; *Com. of Va. v. State of Maryland*, 32 Md. 501; *Wilkinson v. Leland*, 2 Pet. 657; *Sadler v. Langham*, 34 Ala. 311.

What we have said relates to the bonds outstanding against the Alabama and Florida Railroad Company, at and before the act of consolidation. Their payment was secured by an equitable mortgage. We decide nothing as to the non-secured debts.

If the bonds sued on in this case were sold for Confederate currency, the recovery should be for only the purchasing value of the currency thus paid, at the time of the purchase, with interest upon that value.—*Thorington v. Smith*, 8 Wall. (U. S.) 1.

Reversed and remanded.